UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ANNETTE MAXINE COMBS, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| v. | ) | No. 1:21-cv-066-SKL |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Annette Maxine Combs ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Doc. 21 & Doc. 26] and filed supporting briefs [Doc. 22 & Doc. 27]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 21] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 26] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.  ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 14 ("Tr.")], Plaintiff filed her application for DIB on July 21, 2018, alleging disability beginning April 15, 2018. Plaintiff later amended her alleged onset date to January 5, 2018. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on September 4, 2019, in Chattanooga, Tennessee. On November 8, 2019, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at

any time from the amended alleged onset date through the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born January 22, 1972 (Tr. 36), making her 45 years old on the amended alleged onset date, which is considered a "younger person." 20 C.F.R. § 404.1563(c). She has a high school education and is able to communicate in English (Tr. 39). She has past relevant work as an accounts payable/receivable clerk, an insurance clerk, and an office manager. These are all considered skilled jobs, and they are all performed at the sedentary exertional level.

### B. Medical Records

In her June 2018 Disability Report, Plaintiff alleged disability due to nerve pain, chronic fatigue, depression, "NASH" (non-alcoholic fatty liver disease), Epstein-Barr virus ("EBV"), arrhythmia, erythromelalgia, psoriasis, insomnia, and arthritis (Tr. 184). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on September 4, 2019, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 31-57).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

Case 1:21-cv-00066-SKL   Document 28   Filed 05/10/22   Page 2 of 19   PageID #: 1078

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs

3

the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.     The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2022. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her amended alleged onset of disability date, January 5, 2018. At step two, the ALJ found Plaintiff had the following severe impairments: (1) bilateral carpal tunnel syndrome ("CTS") status post right release, (2) obstructive sleep apnea, (3) mild intermittent asthma, (4) obesity, (5) lumbar spine degenerative disc disease, and (6) fibromyalgia. The ALJ also found Plaintiff had the following nonsevere medically determinable impairments: (1) gastroesophageal reflux disease, (2) iron deficiency anemia, (3) hypothyroidism, (4) vitamin D deficiency, (5) hepatic steatosis, (6) hyperlipidemia, (7) Factor V Leiden Mutation, (8) osteoarthritis, (9) arrhythmia, (10) migraine headaches, and (11) depression. Finally, the ALJ found Plaintiff's alleged erythromelalgia and psoriasis were not medically determinable impairments.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

- She can stand and walk only up to four hours per eight-hour workday.

- She can sit up to six hours per eight-hour workday.

- She can frequently handle, finger, and feel with both hands.

- She can frequently climb ramps and stairs.

- She can frequently stoop, kneel, crouch, and crawl.

- She can only occasionally climb ropes, ladders, and scaffolds.

- She can have only occasional exposure to extreme heat, cold, dust, fumes, odors, gases, and other pulmonary irritants.

- She can have only occasional exposure to hazards, including unprotected heights.

(Tr. 20).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as an accounts payable/receivable clerk, an insurance clerk, and an office manager, as she actually performed these occupations and how these occupations are generally performed (Tr. 23). The ALJ noted: Plaintiff "is currently limited to a range of light work, and her past work all involves exertional levels of sedentary. Semi-skilled and skilled work are not precluded under her current residual functional capacity." (Tr. 23). The ALJ further noted the postural and environmental limitations in Plaintiff's RFC did not preclude her from performing her past work (Tr. 23).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the amended alleged onset date of January 5, 2018, and the date of the decision, November 8, 2019 (Tr. 23).

IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, "including but not limited to a *de novo* hearing and a new decision." [Doc. 22 at Page ID # 1052]. She contends the "ALJ's RFC determination lacks substantial evidence because she did not properly evaluate the opinion evidence of Terri Brunvoll, DO." [*Id.* at Page ID # 1046].

A.      **Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may

not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

      **B.**      **The ALJ's Assessment of Dr. Brunvoll's Opinion**

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff filed her application for DIB on July 21, 2018. Accordingly, as both parties acknowledge, the applicable regulation is 20 C.F.R. § 404.1520c.[1]

Subsection (a) of 20 C.F.R.§ 404.1520c provides:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The

---

[1] Applications filed prior to March 27, 2017, were subject to the so-called "treating physician rule," which requires ALJs to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 406 (6th Cir. 2009). ALJs are no longer required to give special deference to treating physicians, as is reflected in the regulation quoted above.

> most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(2).

In addition to supportability and consistency, the ALJ is required to consider the source's relationship with the claimant, including the length, frequency, purpose, and extent of the treating relationship, if any; the source's specialization, and other factors, such as the source's familiarity with other evidence in the record and whether the source understands the SSA's policies and evidentiary requirements. *Id.* § 1520c(c). The ALJ is required to explain how they considered supportability and consistency, but not the remaining factors. *Id.* § 1520c(b)(2).

If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 1520c(b)(1).

Dr. Brunvoll appears to have been a primary care physician for Plaintiff. As mentioned, she offered a medical opinion in June 2019, set forth on a check-mark style form[2] (Tr. 612-14). Regarding Dr. Brunvoll's opinion, the ALJ wrote:

> In June 2019, [Dr. Brunvoll] noted diagnoses for chronic fatigue, OSA, asthma, hypothyroidism, obesity, depression, and fatty liver. She opined the claimant could sit for 2 hours, stand 1 hour, and walk 30 minutes total in a typical workday, occasionally lift 5 to 10 pounds, occasionally bend, push/pull, use hands for gross and fine manipulations. She would need to lie down for 2 hours a day 7 days a week and need to elevate legs 1 hour daily. She opined the claimant would need extra breaks during the workday lasting 2 hours, and limited exposure to humidity, temperature, chemical, fumes, and dust. (Exhibit 16F). This opinion is generally unpersuasive, as it overstates the extent and limiting effects of the claimant's impairments. For example, the limitations on fine and gross manipulations are not supported, as the claimant's motor strength is grossly within normal limits. The diagnosis of chronic fatigue is without laboratory findings, and prior assessment of fibromyalgia showed only a few trigger[] points. Once reflux was better controlled, she reported feeling better and was ready to start the CPAP therapy. (i.e., Exhibits 5F/13, 14; 17F/4, 8).

(Tr. 22).

The ALJ went on to note that the next month, in July 2019, Plaintiff reported feeling "much better," and the results of an "objective exam" were within normal limits, "including normal musculoskeletal, neurological, pulmonary, and psychiatric exams." (Tr. 22). Plaintiff's provider recommended "regular exercise," which the ALJ observed was "inconsistent with a finding of total disability." (Tr. 22).

Plaintiff first challenges the ALJ's finding that the "diagnosis of chronic fatigue is without laboratory findings." (Tr. 22). She argues the ALJ "ignored the treating physician's identification

---

[2] The Sixth Circuit has held that a checkmark opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted).

9

of chronic fatigue as the primary diagnosis that prevented the plaintiff from working, despite ample support and consistency with the record[.]" [Doc. 22 at Page ID # 1049]. According to Plaintiff, "the medical record clearly established that Plaintiff's chronic fatigue diagnosis was undisputed." [*Id.*]. She contends there are "numerous reports from a variety of treating sources going back as far as 2014 diagnosing Plaintiff with fatigue." [*Id.*]. She also cites the fact that the ALJ "acknowledged in her decision that Epstein-Barr testing had been positive for fatigue," and she contends the ALJ "readily accepted during the September 2019 hearing that Plaintiff's fatigue was related to her Epstein-Barr infection, the lab data for which was available to the ALJ in the record." [*Id.* (citing Tr. 40, 370-71)]. In light of these items in the record, Plaintiff argues, it is "apparent that the ALJ's rejection of Dr. Brunvoll's opinion was based on nothing more than the ALJ's own failure to properly review the evidence." [*Id.*].

When asked to "briefly stated your patient's impairments," Dr. Brunvoll listed "chronic fatigue, obst. sleep apnea, asthma, hypothyroidism, obesity, depression, fatty liver." (Tr. 612). She then opined as to Plaintiff's limitations, and when asked to identify the "Diagnostic, laboratory, clinical, or other findings that support the above limitations," Dr. Brunvoll listed "sleep study, pulmonary [illegible], Liver uls"[3] (Tr. 612). The Court also notes that the EBV test results state that they are "*Suggestive* of a *past* Epstein-Barr virus infection. In infants, a similar pattern may occur as a result of passive maternal transfer of antibody." (Tr. 371 (emphasis added)). This one test result notation is hardly as definitive as Plaintiff would suggest, and Plaintiff does not cite to any further test results regarding her possible past EBV. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32-33 (6th Cir. 2009) (discussing claimant who tested positive for EBV "several

---

[3] The nature of these diagnostic tests is not clear; however, Plaintiff does not argue the EBV results came from any of the three tests Dr. Brunvoll identified.

10

years before her work injury," but finding no error with the ALJ's consideration of EBV and chronic fatigue symptoms, noting that subsequent evidence "ruled out" EBV). On the third page of the checkmark form opinion, Dr. Brunvoll did check a box indicating that her opinion "is supported by taking proper medical history, physical exams, and clinical observations, although the record of such is sufficient to support my opinion." (Tr. 614). However, she declined to check the box that would indicate there was any "objective evidence" to support her opinion, nor did she mention the 2014 EBV test results at any point in her opinion (Tr. 614).

Plaintiff is correct that there are references in the record to her fatigue or chronic fatigue. However, with one exception addressed below, none appear to refer to the EBV test results. The Court acknowledges that EBV and "chronic fatigue syndrome" are "sometimes referred to synonymously." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). However, the medical records concerning Plaintiff's fatigue are likewise not as definitive as Plaintiff would suggest. For example, a provider in April 2015 listed "Fatigue" as a "Diagnosis" (Tr. 331), but Plaintiff's "Review of Systems" from that same visit states that Plaintiff denied experiencing any fatigue (Tr. 328). Plaintiff also denied experiencing fatigue during the September 2015, December 2015, and January 2016 appointments Plaintiff cites in her brief (Tr. 341, 345, 349) among others, including appointments as late as December 2018 (Tr. 896). Some of the records describe "Malaise and Fatigue" as a "finding" rather than a diagnosed "disorder" (*see* Tr. 341). In August 2016 (one of the appointments Plaintiff cites), Plaintiff did report that she felt "sleepy during the day." (Tr. 350). However, the record of that visit plainly reflects that this was due to the fact that Plaintiff was taking Benadryl (Tr. 350). In May 2017, Plaintiff sought treatment for congestion, and at that time, she informed her provider that she "has a history of Epstein Barr virus and that it tends to flare up when she gets sick." (Tr. 415). She reported that

11

she was experiencing fatigue at that time (Tr. 416). However, by her next appointment in October 2017, Plaintiff was not experiencing fatigue (Tr. 420).

Plaintiff told Dr. Brunvoll in May 2018 that she "has had chronic fatigue for 28 years," and she "has been everywhere, to different doctors, all tests come up negative." (Tr. 482). *See* Social Security Ruling ("SSR") 99-2P, 1999 WL 271569, at *1 (SSA Apr. 30, 1999) (noting that chronic fatigue syndrome must be "of new or definite onset (i.e., has not been lifelong)"). Dr. Brunvoll noted, "We did find underactive thyroid on the lab tests so that will hopefully make you feel better. Vit D is very low do begin Max D3 10,000 units three times per week for 4 weeks and then twice per week. The rest of her labs were *normal* . . . ." (Tr. 484 (emphasis added)). Dr. Brunvoll noted again in September 2018 that Plaintiff has reported chronic fatigue for 28 years, elaborating that "no one can figure it out." (Tr. 936, 939). Finally, as Plaintiff notes, the following exchange occurred during the administrative hearing before the ALJ:

> ALJ: And, I saw, I believe there was reference to Epstein Barr chronic fatigue syndrome. Have you tested positive for Epstein-Barr?
>
> P: Yes, Ma'am.
>
> ALJ: And has anybody definitively diagnosed chronic fatigue syndrome?
>
> P: I think possibly Dr. Tenny did. I know we've talked about it and they say they suspect that that's the case. They also suspected fibromyalgia but I was atypical so everything they've tried to diagnose they suspect autoimmune but by the time I get to the doctor it shows negative on the tests so that's what we're still chasing.

(Tr. 40-41).

The ALJ addressed some but not all of the records Plaintiff cites, and the Court notes the ALJ is "not required to discuss all of the relevant evidence in the record," so long as they consider

12

the evidence as a whole "and reach a reasoned conclusion." *Ricci v. Berryhill*, No. 3:16-CV-651-HBG, 2017 WL 5985801, at *5 (E.D. Tenn. Dec. 1, 2017) (quoting *Dycus v. Astrue*, No. 3:12-CV-78, 2012 WL 4215829, at *7 (E.D. Tenn. Aug. 30, 2012), *adopted*, 2012 WL 4172138 (E.D. Tenn. Sept. 18, 2012)); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010)). Regardless, considering all of the evidence mentioned above, the existence of the EBV test results does not establish any harmful error in the ALJ's determination that the "diagnosis of chronic fatigue is without *laboratory* findings," nor does it call into question the ALJ's decision not to fully credit Dr. Brunvoll's opinion (Tr. 22 (emphasis added)).

Notably, while the ALJ stated that the "diagnosis of chronic fatigue is without laboratory findings, and prior assessment of fibromyalgia showed only a few trigger[] points," the ALJ did not state that Plaintiff had never been diagnosed with fatigue or chronic fatigue or that Plaintiff did not have a history of reporting fatigue symptoms to her providers. But "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). Here, the ALJ did adequately address the functional limitations imposed by Plaintiff's fatigue. Indeed, the ALJ rejected the opinion of the State agency consultant Thomas Thrush, M.D., who opined Plaintiff was capable of performing medium exertional level work with no environmental limits (Tr. 23). The ALJ specifically noted that limiting Plaintiff to light work affords her "any benefit of the doubt" concerning her symptoms (which would include fatigue as the ALJ recognized), and further that despite Plaintiff's "reports of any inability to continue working due to fatigue, she did so for an extended period with work characterized within the sedentary exertion range." (Tr. 23).

Much of the foregoing discussion addresses the supportability and consistency factors the ALJ is required to discuss with regard to Plaintiff's alleged fatigue, and the Court finds the ALJ

13

did fulfill the ALJ's obligation under the regulation in that regard. In addition to the foregoing, the Court notes the ALJ found the opinion of State agency consultant Tonia Jackson, M.D., to be persuasive (Tr. 23). Dr. Jackson found Plaintiff could perform a reduced range of light work—with only normal breaks—including standing up to four hours per day, sitting up to six hours per day, occasionally carrying up to 20 pounds and frequently carrying up to 10 pounds (Tr. 81-82). The ALJ also cited numerous normal exam findings regarding Plaintiff's physical and mental status, including normal mood and affect in January, September, and October 2018 (Tr. 21-22); normal musculoskeletal exam findings in October 2018 (Tr. 22); negative findings for arthralgias (joint pain), back pain, joint swelling, and myalgias (muscle pain) in November 2018 (Tr. 22); normal findings on musculoskeletal, neurological, pulmonary, and psychiatric exams in July 2019 (Tr. 22); recommendation of exercise in July 2019 (Tr. 22); and at step two of the five-step analysis, the ALJ discussed Plaintiff's documented abilities to "provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment," as well as her ability to "handle her own medical care," maintain appropriate hygiene, "get along with caregivers," and appear pleasant, cooperative, and comfortable at her appointments with providers (Tr. 18). The ALJ Also explicitly found Plaintiff had only mild limitations in her ability to understand, remember, or apply information, which Plaintiff does not challenge (Tr. 18). To the extent Plaintiff relates her fatigue to her fibromyalgia, the ALJ specifically mentioned that in June 2018, Plaintiff was "tender at only a few of the fibromyalgia points." (Tr. 21).

Plaintiff cites one unpublished case from 2013 from the Southern District of Ohio, *Donges v. Commissioner of Social Security*, No. 1:12-cv-314, 2013 WL 3148259 (S.D. Ohio June 19, 2013), *adopted*, 2013 WL 3819748 (S.D. Ohio July 23, 2013). The Commissioner does not address *Donges* in her brief [*see* Doc. 27]. Nevertheless, *Donges* is distinguishable and its

reasoning is not persuasive in the context of this case. First, *Donges* was decided under the prior regulations and involved application of the treating physician rule, meaning the ALJ in that case was *required* to give *controlling weight* to the medical opinion at issue. 2013 WL 3148259, at *3-4. The claimant's treating physician diagnosed her with EBV and specifically with chronic fatigue syndrome. *Id.* at *4-5. In finding the ALJ erred by rejecting the treating physician's opinion regarding the claimant's functional limitations, the court noted that the "treatment records of treating and examining physicians subsequent to Dr. Nadal confirm plaintiff continued to suffer from . . . chronic Epstein-Barr virus (EBV) infection . . . on an ongoing basis." *Id.* at *5. Moreover, the treating physician's "report and treatment records reflect the association between plaintiff's chronic fatigue and elevated EBV." *Id.* As set forth above, the facts of the instant case differ.

Plaintiff also challenges the ALJ's consideration of Dr. Brunvoll's opinion regarding Plaintiff's limitations in fine and gross manipulation. As quoted above, the ALJ expressly found Dr. Brunvoll's assigned limitations on fine and gross manipulation were not supported because Plaintiff's "motor strength is grossly within normal limits." (Tr. 22). Plaintiff argues the ALJ engaged in "cherry picking evidence to support a finding of non-disability," and that it was error for the ALJ to "focus[] on a singular finding of normal motor strength." [Doc. 22 at Page ID # 1050]. Plaintiff cites to treatment records from Brian Smith, M.D.'s office, including notes that Plaintiff reported bilateral hand pain, numbness, and tingling on January 22, 2018 (Tr. 605-06). During that same visit, Dr. Smith diagnosed severe CTS in Plaintiff's right hand and mild on the left, as confirmed by a nerve conduction study (Tr. 607). However, Plaintiff acknowledges this evidence predates a right hand carpal tunnel release and a left hand carpal tunnel injection on January 30, 2018 (Tr. 596). The record reflects Plaintiff experienced improvement in both hands after the procedures (Tr. 598).

15

Plaintiff contends the ALJ's failure to specifically discuss the initial diagnoses indicates she "ignored" this evidence, but a reasonable interpretation is that the ALJ simply chose to focus the written decision on the status of Plaintiff's CTS after the procedures., because that time period is more pertinent to her claim. Further, Dr. Brunvoll offered her opinion in June 2019, making Plaintiff's status after the procedures more relevant to her analysis.[4] Indeed, Dr. Brunvoll did not even refer to Plaintiff's CTS in her opinion or list it as one of Plaintiff's impairments.

Plaintiff also contends the ALJ ignored her testimony from the September 2019 hearing indicating that she still experiences pain and numbness in her hands (Tr. 49; *see also* Doc. 22 at Page ID # 1050). True, the ALJ did not expressly discuss this particular testimony. However, the ALJ did cite to the hearing testimony, indicating she considered it, and the ALJ discussed Plaintiff's subjective allegations, finding them not entirely consistent with the objective evidence in the record. The objective evidence includes the post-procedure findings by Dr. Smith, indicating that Plaintiff's condition improved after the procedures, and that in her follow-up appointment, she could make a full fist and satisfactorily perform other hand tests, as the ALJ noted (Tr. 21, 598). The "Discussion Notes" from the appointment state:

> The sutures were removed today on the right. . . She will wear the split at night and during at risk activities. She was cautioned against overuse of the right hand over the next 3-4 weeks. We will see her back in 3-4 weeks and hopefully let her go unrestricted on the right.

(Tr. 599). Plaintiff does not cite to any subsequent records showing any concerns from Dr. Smith.

Moreover, State agency consultant Dr. Jackson found Plaintiff had no limitations in manipulating in February 2019 (Tr. 82), and the ALJ found Dr. Jackson's opinions "persuasive,"

---

[4] Plaintiff does not argue she is entitled to an award for any closed period of time prior to her carpal tunnel procedures.

noting they are "supported by the totality of the objective record." (Tr. 22). As such, the Court concludes Plaintiff has failed to show ALJ mischaracterized the relevant treatment notes, overlooked or ignored contrary lines of evidence, or otherwise "cherry-picked select portions of the record." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014) (finding error where the ALJ failed to address "portions of the record, including the evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications").

The ALJ's decision in this case demonstrates that the ALJ considered the factors of supportability and consistency in evaluating Dr. Brunvoll's opinion in the context of the record as a whole, and ultimately reached a reasoned conclusion regarding Plaintiff's RFC. The ALJ's articulation is sufficient to allow the Court to review the ALJ's evaluation of these factors and to determine that the ALJ's evaluation and decision is supported by substantial evidence. The decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

In sum, because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported her conclusion and why she considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. Plaintiff cites to evidence in the record to support her position, but that is insufficient given the standard of review. *See Schmiedebusch*, 536 F. App'x

17

at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted).

As the Commissioner notes in her brief, Plaintiff does not make any developed argument concerning mental limitations related to her depression, which the ALJ found to be a nonsevere impairment.

Finallt, as the Commissioner also notes in her brief, Plaintiff set forth in her complaint a constitutional claim pursuant to *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) [*see* Doc. 1 at Page ID # 2].  However, Plaintiff does not address this issue at all in her brief.  Accordingly, the Court finds Plaintiff has waived any argument related to these issues and as such, they are not addressed any further herein.  *See Frank v. Good Samaritan Hosp. of Cincinnati, LLC*, 843 F. App'x 781, 782 (6th Cir. 2021) ("The district court dismissed [the] suit for negligent destruction of medical records after Frank failed to make any argument that Ohio recognizes such a tort.  His brief before us is similarly 'devoid of any legal argument' in that regard.  The striking legal emptiness of his brief means that he abandoned the argument . . . ." (citation omitted)); *see also Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[J]udges are not like pigs, hunting for truffles that might be buried in the record.").

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for summary judgment [Doc. 21] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 26] is **GRANTED**; and

18

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE